FILED
2012 Apr-16  PM 04:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **DONALD JOE BARBER, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:11-cv-3249-AKK** |
| **STATE OF ALABAMA**, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are motions to dismiss Plaintiffs Donald Joe Barber and

Joshua Allen Barber's (collectively "Plaintiffs") Amended Complaint, doc. 40,

filed by Randy Christian, doc. 42, John Pennington, doc. 43, Jefferson County

Sheriff's Office, doc. 44, Mike Hale, doc. 45, B.L. Cochran and the City of

Morris, doc. 48, the State of Alabama, Alfred Bahakel, District Attorney's Office,

Brandon Falls, and Pactrick Lamb, doc. 49, and Steve Loggins, North Jefferson

Baptist Association, Jackie Lee Robinson, Christopher Dwayne Smith, and

Patricia Faye Smith, doc. 53.  Also before the court is Plaintiffs' motion for a

default judgment against certain Defendants, doc. 50.

It is clear from the record that Plaintiffs believe their rights were

violated—and by individuals exercising laws of jurisdictions that Plaintiffs believe

have no power or control over them.  While Plaintiffs are purportedly *not* "citizens

of these united States of America," as they point out repeatedly, they are

nonetheless entitled to the protections afforded by the Constitution of the United States.  However, after carefully reviewing Plaintiffs' allegations, and based on the law that this court must follow, the court finds that Plaintiffs failed to plead sufficient facts to show that they are entitled to relief.  Accordingly, as stated more fully below, the court **GRANTS** all motions to dismiss and **DENIES** the motion for default judgment.

## I.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted).  Thus, when considering a

motion to dismiss, the court accepts all factual allegations as true.  *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).  However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth.  *Iqbal*, 129 S. Ct. at 1950.   A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  This demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). The Eleventh Circuit instructs that Rule 12(b)(6) "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]."  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 129 S. Ct. at 1950.

## II.    FACTUAL AND PROCEDURAL HISTORY

The basis for this action originates in February or March 2010, when Plaintiffs purportedly "sent notice to the Jefferson County Sheriff's office and to the Jefferson County Commission that they, and a group of other men and women in the Pinson area, were exercising their rights of self-determination by reestablishing their own government call[ed] the judicial district of tens, fifties,

hundreds and thousands, as found in the book of Exodus in the King James Bible and pursuant to the Declaration of Independence." Doc. 40, at 4.  Following this notice of exodus from the state's jurisdiction, in May 2010, Plaintiffs sought the aid of the District Attorney's Office by reporting an alleged theft of money from Plaintiffs' church by Defendants Jackie Lee Robinson, Patricia Faye Smith, Christopher Dwayne Smith, North Jefferson Baptist Association, and Steve Loggins (collectively "Baptist Association Defendants").  When the District Attorney's Office failed to prosecute, Plaintiff Donald Joe Barber "instituted commercial liens against the offending parties under his Right to contract under the Constitution for these united States of America." *Id.*  In response, the Baptist Association Defendants purportedly convinced the District Attorney's Office to issue warrants and arrest Plaintiffs. *Id.* at 5.

On October 24, 2010, Plaintiffs "issued a press release . . . asking why the people of Jefferson County should re-elect a district attorney who would not prosecute criminals, namely the thieves that stole the money from the church." *Id.* Plaintiffs claim that for doing so, the District Attorney, presumably Brandon Falls, "[t]rumped up charges against the plaintiff and his two sons, Joshua Allen Barber and Donald Jason Barber." *Id.*  Plaintiffs contend that the "charges against Donald Joe Barber and Joshua Allen Barber were allegedly intimidating a witness by the filing of court documents, by their exercising their Right to Contract, Right of Free Speech, the Right to redress of grievance and Right of freedom of religion." *Id.* Moreover, Plaintiffs assert that, as it relates to the charges against Donald Jason

Barber, the District Attorney utilized a previously dismissed attempted burglary charge. In addition to this burglary charge, the District Attorney charged Donald Jason Barber with possession of burglary tools and a traffic violation arising from a license "plate on his automobile from the judicial district of tens, fifties, hundreds and thousands." *Id.* For these charges, Donald Jason Barber allegedly faces a $31,000 bond. *Id.*

After the arrest of Donald Jason Barber, Plaintiffs maintain that the Jefferson County Sheriff's Office executed an unlawful search warrant on the Plaintiffs' property based on a false affidavit given by Defendant John Pennington. *Id.* at 6, 8-9. Pennington supposedly failed "to state any crime that had been committed or was in the process of being committed . . . for said search warrant." *Id.* at 6. Plaintiffs provide that the search warrant also failed to particularly describe the "place to be searched and things to be seized," *id.* at 8, and that Jefferson County Sheriff Deputies "took documents that the plaintiff would and could rely upon in a defense of the alleged charges should this matter go to trial." *Id.* at 9. Moreover, allegedly, the Jefferson County Sheriff's Office falsely "informed the media that the plaintiff's[sic] were somehow involved with the Oklahoma City bombing and a shooting in Memphis, Tennessee and other so-called groups in the Midwest that had caused physical violence against the government" when Plaintiffs "had well advised the defendants that they were non-belligerent, non-violent, good and lawful Christian men and women that believed in using the courts as a means of redress and grievance and would never revert to

violence." *Id.* at 6.

The Amended Complaint states that the Jefferson County Sheriff's Office also arrested Joshua Allen Barber for attempted burglary and possession of burglary tools; however, the Amended Complaint fails to provide a time frame for this arrest. *Id.* As it relates to this arrest, Plaintiffs contend that Joshua Barber "was asked by a friend to help another friend retrieve a deep freeze[r] that belonged to them from the former place in which they lived, which was at the husband's house of the couple that was separated. Joshua consented and went with his friend to help get the deep freeze[r]. The Jefferson County Sheriff's office was allegedly called on a burglary attempt, claiming they were stealing the copper out of an air conditioner." *Id.* Moreover, at some point, Joshua Barber "was pulled over by [a] Jefferson County deputy because he had a cracked windshield . . . [t]he deputy did an unlawful search of the plaintiff's automobile and found a pill of some sort under the seat and alleged that it belong to Joshua Allen Barber." As such, the deputy arrested Joshua Barber. *Id.* at 7.

The District Attorney's Office subsequently attempted to revoke certain bonds against Plaintiffs. *Id.* at 6. Accordingly, Plaintiffs appeared before Jefferson County Circuit Judge Alfred Bahakel for a bond revocation hearing, *see id.* at 7-9, and "challenged the jurisdiction of the court" but "the court has refused and/or otherwise failed to prove said jurisdiction over the plaintiff's[sic]." *Id.* at 7. Moreover, after one of Joshua Barber's arrests, Plaintiffs appeared in Judge Bahakel's court for an arraignment and "immediately challenge[d] the jurisdiction

of the court again and demanded proof of such jurisdiction." *Id.* As a result, the "court placed the Plaintiff under house arrest, without proof of jurisdiction, usurping a false jurisdiction ending in a false arrest of the Plaintiff Joshua Allen: Barber, an American National and **NOT** a 'c̲itizen of the UNITED STATES' or a 'c̲itizen of the 'STATE OF ALABAMA.'" *Id.* at 9 (emphasis by Plaintiffs).

Plaintiffs filed their original complaint on September 9, 2011. Doc. 1. After Plaintiffs cured certain procedural defects, they eventually filed a fifty-two count Amended Complaint on January 4, 2012 against the State of Alabama, Jefferson County, Judge Alfred Bahakel, the District Attorney's Office, District Attorney Brandon Falls, Assistant District Attorney Pactrick Lamb, Jefferson County Sheriff's Office, Sheriff Mike Hale, Deputy Sheriff Randy Christian, Deputy Sheriff John Pennington, the City of Morris, B.L. Cochran, Jackie Lee Robinson, Patricia Faye Smith, Christopher Dwayne Smith, North Jefferson Baptist Association, and Steve Loggins. Doc. 40. All Defendants have filed motions to dismiss, docs. 42, 43, 44, 45, 48, 49, 53, that are fully briefed, docs. 55, 56, 57, 58, 59, 62, and ripe for review.

## III.   ANALYSIS

A.   *Claims Failing to Satisfy Fed. R. Civ. P. 8(a)*

The court must construe Plaintiffs' pleadings liberally because they proceed in this case *pro se*—that is, without an attorney. *See Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) (citation omitted). However, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an

otherwise deficient pleading in order to sustain an action." *GJR Invs. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). Indeed, "[o]nce a *pro se* litigant is in court, he is subject to the relevant laws and rules of court, including the Federal Rules of Civil Procedure." *Smith v. Fla. Dep't of Corr.*, 369 F. App'x 36, 38 (11th Cir. 2010) (citing *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989)). Therefore, while the court construes Plaintiffs' pleadings liberally and affords significant leniency in light of their *pro se* status, the court may not wholly disregard the federal pleading standards and standard of review. *See Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990); *see also Smith*, 369 F. App'x at 38. Accordingly, the court agrees with Defendants that various counts asserted in the Amended Complaint fail to state any cognizable right to relief. *See, e.g.*, doc. 48 (incorporating arguments made in doc. 29); doc. 49 (incorporating arguments made in doc. 16); doc. 53. These counts amount to unsupported legal conclusions that Plaintiffs generally allege against all seventeen named Defendants and that offer no reasonable inference of liability. *See Iqbal*, 129 S. Ct. at 1950. While Fed. R. Civ. P. 8(a) allows for liberal pleading, these counts are simply "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." Therefore, they violate the Rule 8 pleading standards, and the court **DISMISSES with prejudice** counts 1, 2, 3, 4, 12, 13, 15, 18, 19, 22, 23, 24, 25, 28, 29, 30, 31, 32, 33, 42, 43, 44, 47, 48, 51. *See generally* doc. 40.

B.    *State of Alabama*

Plaintiffs may not bring suit against the State of Alabama because "'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.'"  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (quoting *Emp. of Dep't of Pub. Health and Welfare, Mo. v. Dep't of Pub. Health and Welfare, Mo.*, 411 U.S. 279, 280 (1973)).  While state sovereign immunity is not absolute, *see In re Diaz*, 647 F.3d 1073, 1082 (11th Cir. 2011), here, Plaintiffs offer no justification that allows this court to entertain a private entity's suit against the State of Alabama.  *See Va. Office for Protection and Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State."); *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) ("Pursuant to the Eleventh Amendment, a state may not be sued in federal court unless it waives its sovereign immunity or its immunity is abrogated by an Act of Congress under section 5 of the Fourteenth Amendment.") (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000)).  Put differently, in Plaintiffs' fifty-two count Amended Complaint, they fail to provide a cause of action against the State of Alabama in which Congress abrogated state sovereign immunity under the Eleventh Amendment to the United States Constitution or where Alabama waived sovereign immunity.  *See generally* doc. 40.  Therefore, Plaintiffs' claims against

the State of Alabama are **DISMISSED with prejudice**.[1]

C.    *District Attorney's Office*

Plaintiffs also file suit against the District Attorney's Office; however, the District Attorney's Office constitutes a state agency and is therefore entitled to state sovereign immunity under the Eleventh Amendment.  In other words, as aptly stated by the Federal District Court for the Southern District of Alabama, "[b]ecause an Alabama district attorney's office is a state agency, when the office is sued, it is as if the State is sued.  However, a lawsuit against the State or its agencies is barred by the Eleventh Amendment regardless of the relief requested." *Peeples v. Mobile Cnty. Dist. Attorney's Office*, No. 11-00217-CG-B, 2011 WL 5217257, at *2 (S.D. Ala. Oct. 11, 2011).  Again, the State of Alabama has not waived immunity here, and Plaintiffs fail to assert any claim against the District Attorney's Office where Congress abrogated Eleventh Amendment sovereign immunity.  *See generally* doc. 40.  Therefore, Plaintiffs' claims against the District Attorney's Office are **DISMISSED with prejudice**.

D.    *Jefferson County*

For the third time, *see* docs. 24, 39, Defendant Jefferson County is

---

[1] Plaintiffs argue that sovereign immunity constitutes a "legal fiction," is absent from the U.S. Constitution, and is "sternly denounced in the Declaration of Independence."  Doc. 55, at 3-4.  The court however notes the plain language of the Eleventh Amendment to the U.S. Constitution which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  *See also Emp. of Dep't of Pub. Health and Welfare, Mo. v. Dep't of Pub. Health and Welfare, Mo.*, 411 U.S. 279, 280 (1973).

**DISMISSED without prejudice** due to its current bankruptcy proceedings. Jefferson County, Alabama filed Chapter 9 bankruptcy in the United States Bankruptcy Court for the Northern District of Alabama, Case No. 11-05736-9, on November 9, 2011.  Accordingly, Jefferson County is dismissed as a defendant in the above styled action, subject to the right of any party to seek reactivation upon resolution of the bankruptcy proceedings.

E.    *Jefferson County Sheriff's Office*

Although Plaintiffs name the Jefferson County Sheriff's Office as a party defendant, the Sheriff's Office or Department is not a legal entity and is therefore not subject to suit or liability.  *Dean v. Barber*, 951 F.2d 1210, 1214-15 (11th Cir. 1992).  While sheriff's departments "are not usually considered legal entities subject to suit," *id.* at 1214, the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." *Id.* (citing Fed. R. Civ. P. 17(b)).[2]  And, "[u]nder Alabama law, a county sheriff's department lacks the capacity to be sued." *Id.* at 1215 (citing *White v. Birch*, 582 So. 2d 1085, 1087 (Ala. 1991)).  Therefore, Plaintiffs' claims against the Jefferson County Sheriff's Office are **DISMISSED with prejudice**.

F.    *Alfred Bahakel*

Plaintiffs assert money damages claims against Jefferson County Circuit Court Judge Alfred Bahakel ("Judge Bahakel") for erroneous exercise of

---

[2] Moreover, the "Jefferson County Sheriff's Department is not an 'unincorporated association' for purposes of Rule 17." *Dean v. Barber*, 951 F.2d at 1214 n.4.

jurisdiction over Plaintiffs, *id.* at 20, 21, 27 (counts 26, 27, 46), and refusal to return certain properties to Plaintiffs, *id.* at 29 (count 49). Although not specifically stated, Plaintiffs primarily seek relief under 42 U.S.C. § 1983,[3] in that they claim Judge Bahakel, acting under color of state law, violated certain constitutional rights and guarantees. *See generally* doc. 55, at 1-3. In turn, Judge Bahakel asserts judicial immunity from liability. *See* doc. 49 (incorporating arguments made in doc. 16, at 5-7). The court finds Judge Bahakel entitled to judicial immunity.

"[T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have." *Forrester v. White*, 484 U.S. 219, 226 (1988). And indeed, "[i]f judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication." *Id.* at 226-27 (citations omitted).

---

[3] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia." 42 U.S.C. § 1983.

Perhaps more importantly, there are alternative avenues to challenge decisions made by judicial officers, or put differently, "suits against judges [are not] the only available means through which litigants can protect themselves from the consequences of judicial error." *Id.* at 227. Litigants facing unfavorable decisions may seek relief "through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability." *Id.*

Accordingly, to the extent that Plaintiffs bring suit against Judge Bahakel in his individual capacity for money damages, "[t]he Supreme Court has set forth a two-part test for determining when a judge is entitled to immunity from money damages liability when sued under section 1983. *Stump v. Sparkman*, 435 U.S. 349, 98 S. Ct. 1099, 55 L.Ed.2d 331 (1978). The first part of the test is whether the judge dealt with the plaintiff in a judicial capacity." *Simmons v. Conger*, 86 F.3d 1080, 1084 (11th Cir. 1996). "[T]he second part of the test is whether the judge acted in the 'clear absence of all jurisdiction.'" *Id.* at 1085 (quoting *Stump*, 435 U.S. at 357). Plaintiffs first purportedly contend that Judge Bahakel acted outside of his judicial capacity. *See* doc. 55, at 8. In support, Plaintiffs allege that, when the state brought them before Judge Bahakel for an arraignment, they:

> [R]ead into the record a document challenging the jurisdiction of said court, explaining that he did not understand the charges nor the nature and cause of the action and for that reason refused to make a plea. The plaintiff's[sic] went on and offered substantial proof to the court of their lack of jurisdiction and then asked the court to offer their proof of jurisdiction. The only response was a shrug of the shoulders

of the judge.  However, the judge determine[sic] in his own mind that
he somehow had jurisdiction and continued on with the case without
proving jurisdiction as is required by the . . . Supreme Court.

*Id.* at 9.  Plaintiffs' argument appears to actually address the second prong—i.e.,

whether Judge Bahakel properly exercised jurisdiction, therefore, the court focuses

its analysis on the second prong.[4]

Thus, the pertinent question is whether Judge Bahakel acted in a clear

absence of all jurisdiction.  "A judge does not act in the 'clear absence of all

jurisdiction' when he acts erroneously, maliciously, or in excess of his authority,

but instead, only when he acts without subject-matter jurisdiction." *Takuma*

*Owuo-Hagood v. Sullivan*, 388 F. App'x 953, 955 (11th Cir. 2010) (citing *Dykes*

*v. Hosemann*, 776 F.2d 942, 947-48 (11th Cir. 1985)).  Here, based on the facts

provided by Plaintiffs in their Amended Complaint, Joshua Allen Barber

originally appeared before Judge Bahakel after his arrest in Jefferson County for

alleged possession of an illegal substance or alleged attempted burglary, doc. 40,

at 5-7, and subsequently appeared before Judge Bahakel for bond revocation

---

[4] The court further notes the Supreme Court's decision in *Pierson v. Ray*, 386 U.S. 547,
553-54 (1967), cited by Plaintiffs, doc. 55, at 7, and which supports judicial immunity for Judge
Bahakel: "The record is barren of any proof or specific allegation that Judge Spencer played any
role in these arrests and convictions other than to adjudge petitioners guilty when their cases
came before his court.  Few doctrines were more solidly established at common law than the
immunity of judges from liability for damages for acts committed within their judicial discretion,
as this Court recognized when it adopted the doctrine, in *Bradley v. Fisher*, 13 Wall. 335, 20
L.Ed. 646 (1872).  This immunity applies even when the judge is accused of acting maliciously
and corruptly, and it is not for the protection or benefit of a malicious or corrupt judge, but for
the benefit of the public, whose interests it is that the judges should be at liberty to exercise their
functions with independence and without fear of consequences." *Id.* (quotation marks and
citation omitted).

hearings.  That Plaintiffs are not "'citizen[s] of the UNITED STATES' or a 'citizen of the 'STATE OF ALABAMA,'" doc. 40, at 9, does not divest Judge Bahakel of jurisdiction over them or establish that Judge Bahakel acted in a clear absence of jurisdiction.[5]  This is because "[a] person who is not a citizen of the United States or a resident of Alabama may be prosecuted in the jurisdiction where he committed a crime."  *Snavely v. City of Huntsville*, 785 So. 2d 1162, 1169 (Ala. Crim. App. 2000).  Thus, regardless of Plaintiffs' claimed nationality, Judge Bahakel still exercised proper jurisdiction because the state charged Joshua Allen Barber with crimes occurring within Judge Bahakel's territorial jurisdiction.  As stated aptly by the Alabama Court of Criminal Appeals, "[j]urisdiction to prosecute or convict for crime comes solely from the criminal law, and depends in no degree upon the consent of the litigant, whether state or citizen, sovereign or subject."  *Id.*  And again, the court reiterates that, in light of any unfavorable judicial decisions by Judge Bahakel—such as bond revocations, imposition of criminal sentences, or failure to disclose seized property—Plaintiffs are not precluded from seeking relief through the appropriate appellate channels. Therefore, while Plaintiffs correctly assert in their response that judicial immunity is not absolute, doc. 55, at 1, the court finds no evidence that Judge Bahakel

---

[5] "Every person, whether an inhabitant of the State of Alabama or of any other state or country, is liable to punishment by the laws of Alabama for an offense committed in the state, except when it is by law exclusively cognizable in the United States courts."  Ala. Code § 15-2-1; *see also* Ala. Code § 15-2-2 ("Unless otherwise provided by law, the venue of all public offenses is in the county in which the offense was committed.").

lacked jurisdiction over Plaintiffs.[6]  Accordingly, the court **DISMISSES with prejudice** all claims against Judge Bahakel.

G.    *Brandon Falls and Pactrick Lamb*

Plaintiffs assert money damages claims against District Attorney Brandon Falls ("Falls") and Assistant District Attorney Pactrick Lamb ("Lamb") for retaliation against Plaintiffs for exercise of First Amendment rights, doc. 40, at 12, 16, 23 (counts 6, 16, 34, 35); abuse of office, *id.* at 12-13 (counts 7, 8); impairing the right to contract in violation of 42 U.S.C. § 1983, *id.* at 16 (count 17)[7]; breach of prosecutorial duties for failure to prosecute alleged wrongdoers, *id.* at 27 (count 45); refusal to produce evidence of jurisdiction, *id.* at 27 (count 46); and refusal to

---

[6] Plaintiffs repeatedly cite *Hagans v. Lavine*, 415 U.S. 528 (1974), for the proposition that once they challenged Judge Bahakel's jurisdiction, such jurisdiction "must be proved." *See* doc. 40, at 7-8; doc. 55, at 8-9.  However, the Court in *Hagans* addressed a *federal* district court's subject matter jurisdiction.  415 U.S. at 548-49.  Federal courts have limited jurisdiction, and indeed, litigants must demonstrate federal subject matter jurisdiction in order to pursue their claims in a federal court.  *See* Fed. R. Civ. P. 8(a)(1); *In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035, 1042 (11th Cir. 2008).  On the other hand, state circuit courts possess general jurisdiction to hear alleged criminal matters.  *See Ex parte Williams*, 53 So. 2d 334, 335 (Ala. 1951) ("The circuit court is a court of unlimited, original jurisdiction in respect to the enforcement of the criminal laws of the state . . . .").  Thus, again, Plaintiffs fail to demonstrate how Judge Bahakel falsely exercised jurisdiction for these alleged criminal charges.

[7] Plaintiffs also cite 42 U.S.C. §§ 1985 and 1986 as grounds for relief against Lamb.  Doc. 40, at 16.  Without more explicit direction in the Amended Complaint, the court assumes Plaintiffs seek relief under 42 U.S.C. 1985(3).  "To state a claim for relief under § 1985(3), a plaintiff must establish that there was 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'" *Smith v. Belle*, 321 F. App'x 838, 845 (11th Cir. 2009) (quoting *Griffin v. Breckenridge*, 402 U.S. 88, 102 (1971)).  Here, Plaintiffs fail to demonstrate that they belong to some protected class; as such, their § 1985(3) claim against Lamb is **DISMISSED**.  Accordingly, Plaintiffs' § 1986 claim—premised on knowledge of § 1985 violations—is also **DISMISSED**.

return certain properties to Plaintiffs, *id.* at 29 (count 49).  Similar to the claims against Judge Bahakel, the proper procedural vehicle for Plaintiffs' various theories of constitutional violations against Falls and Lamb arises from 42 U.S.C. § 1983.  Also similar to Judge Bahakel, Falls and Lamb contend that Plaintiffs' claims are barred under prosecutorial immunity.

"Traditional common-law immunities for prosecutors apply to civil cases brought under § 1983." *Rehberg v. Paulk*, 611 F.3d 828, 837 (11th Cir. 2010) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976)).  As such, "prosecutors have absolute immunity for all activities that are 'intimately associated with the judicial phase of the criminal process.'" *Id.* (quoting *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009)).  In determining whether a prosecutor may seek relief under this immunity, the court must consider "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).  Accordingly, absolute prosecutorial immunity "'extends to a prosecutor's acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State.'" *Rehberg*, 611 F.3d at 838 (quoting *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999)).  Put differently, a "prosecutor's decision to bring charges against a person, so long as the prosecutor is acting within the scope and territorial jurisdiction of his office, is immune from an action for damages under § 1983." *Elder v. Athens-Clark Cnty., Ga.*, 54 F.3d 694, 695 (11th Cir. 1995).  However, where a "prosecutor functions in a capacity unrelated

to his role as an advocate for the state, he is not protected by absolute immunity but enjoys only qualified immunity." *Rehberg*, 611 F.3d at 838.

      Here, as it relates to Falls and Lamb, Plaintiffs allege that "[t]he district attorney, after many attempts to get him to prosecute the people responsible for stealing the churches[sic] monies, failed and/or otherwise refused to do so." Doc. 40, at 4. Plaintiffs contend that they subsequently instituted commercial liens against the offending parties, and for doing so, the "Dist. Atty. [p]romptly issued warrants, in violation of the Plaintiffs[sic] Rights, and arrested the plaintiffs, Donald Joe: Barber and Joshua Allen Barber for exercising their Right to Contract and for filing documents into the courts." *Id.* at 5. Moreover, Plaintiffs assert that they "issued a press release on or about October 24, 2010 asking why the people of Jefferson County should re-elect a district attorney who would not prosecute criminals, namely the thieves that stole the money from the church. In an act of revenge and retaliation, the Dist. Atty. [t]rumped up charges against the plaintiff and his two sons, Joshua Allen Barber and Donald Jason Barber." *Id.* Plaintiffs, however, provide that the state charged Donald Jason Barber with attempted burglary, possession of burglary tools, and a traffic violation. Additionally, Plaintiffs maintain—although it is unclear from the face of the complaint when this occurred—that the "District Attorney's Office has now filed a motion to revoke the bond of Joshua Allen Barber" for burglary and possession of burglary tools charges. *Id.* at 6.

      Taking these allegations as true, the court finds that Lamb and Falls acted in

their capacity as advocates for the state and are therefore entitled to absolute prosecutorial immunity.  Despite allegations of malicious prosecution, Plaintiffs fail to allege "that either attorney acted outside of his role as an advocate."  *Bias v. Crosby*, 346 F. App'x 455, 458 (11th Cir. 2009) (finding district attorneys immune from liability where plaintiff claimed "that they maliciously caused him to be arrested, fabricated evidence that led to his imprisonment, suppressed material evidence, and conspired with [the Sheriff], but allege[d] nothing showing that either attorney acted outside of his role as an advocate").  *See also Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279-80 (11th Cir. 2002) (holding that, because the "prosecutorial function includes the initiation and pursuit of criminal prosecution, . . . it is clear that, even if [the prosecutor] knowingly proffered perjured testimony and fabricated exhibits at trial, he is entitled to absolute immunity from liability for doing so").  Indeed, Plaintiffs' allegations, at worst, maintain that Lamb and Falls instituted unfounded charges against Plaintiffs.  However, Plaintiffs fail to demonstrate that Lamb and Falls left the realm of advocates for the state in bringing these charges.  Moreover, Plaintiffs neglect to maintain any indication leading to the reasonable inference that the charges brought by Lamb and Falls were actually unfounded.  Thus, Plaintiffs' claims against Falls and Lamb are **DISMISSED with prejudice**.

H.    *Mike Hale*

        Plaintiffs assert money damages claims against Jefferson County Sheriff Mike Hale ("Sheriff Hale") in his individual capacity for the execution of

fraudulent search warrants by the Jefferson County Sheriff's Department under his leadership, doc. 40, at 13-14 (counts 10, 11); harassment and trespass, *id.* at 15 (count 14); and false detainment of persons after posting of proper bail, *id.* at 29 (count 50).  Sheriff Hale maintains that these claims are barred under the doctrine of qualified immunity.  *See* doc. 45 (incorporating by reference arguments made in doc. 11).[8]  Plaintiffs fail to assert that Sheriff Hale personally violated a clearly established constitutional right, and therefore, the court grants Sheriff Hale qualified immunity and **DISMISSES** Plaintiffs' claims against Sheriff Hale **with prejudice**.

"Qualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)).  To receive qualified immunity from suit, "the government official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Mathews v. Crosby*, 480 F.3d 1265, 1269 (11th Cir. 2007).  The burden then shifts to the plaintiff to demonstrate that qualified immunity is not appropriate.  To do so, plaintiffs must show: (1) "the government official's conduct violated a constitutional right" and (2) preexisting federal law "clearly

_____

[8] To the extent that Plaintiffs seek to bring claims for money damages against Sheriff Hale in his official capacity, such claims are barred by the Eleventh Amendment.  *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990).

established" this right.  *Id.*  (citing *Saucier*, 533 U.S. at 201).  Recently, the

Supreme Court provided that "judges of the district courts . . . should be permitted

to exercise their sound discretion in deciding which of the two prongs of the

qualified immunity analysis should be addressed first in light of the circumstances

in the particular case at hand."  *Pearson*, 555 U.S. at 236.  Therefore,

"[g]overnment officials performing discretionary functions are entitled to qualified

immunity 'insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" *Lancaster*

*v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1424 (11th Cir. 1997) (quoting *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Holloman ex rel. Holloman v.*

*Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).

        As it relates to violations of "clearly established" constitutional rights,

Plaintiffs allege that Sheriff Hale allowed service of a "known fraudulent search

warrant against plaintiff's[sic] that did not even closely resemble the properties

listed in the search warrant and took properties of the plaintiff that were not listed

in the fraudulent search warrant in violation of the 5th Amendment."  Doc. 40, at

13-14.  Additionally, Plaintiffs maintain that Sheriff Hale "falsely detained

inmates after bail has been posted.  The Plaintiffs had bail posted and was[sic]

detained some six to eight hours after said bail was posted in violation of the

Plaintiffs[sic] Right to life and liberty under the Fifth Amendment to the

Constitution of these united States of America."  *Id.* at 29.

        The illegal search and seizure and due process allegations fail to sufficiently

establish that Sheriff Hale personally participated in a constitutional violation or that some act by Sheriff Hale caused these purported constitutional violations. "'It is axiomatic, in section 1983 actions, that liability must be based on something more than a theory of respondeat superior.'" *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (quoting *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986)). However, Plaintiffs' specific factual allegations are made against Jefferson County Sheriff Deputies "under the leadership of Mike Hale." Doc. 40, at 13-14. "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Brown*, 906 F.2d at 671. Moreover, the "causal connection can be established when a history of widespread abuse puts the reasonable supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Id.* Here, Plaintiffs fail to establish a causal connection or to plead facts that show that Sheriff Hale had notice of the need to correct alleged deprivations and failed to do so. Instead, by merely alleging isolated constitutional violations "under the leadership" of Sheriff Hale, Plaintiffs insufficiently allege that Sheriff Hale, in his supervisory capacity, violated a clearly established constitutional right regarding fraudulent search warrants or due process. *See Iqbal*, 129 S. Ct. at 1953-54. Accordingly, Plaintiffs' claims against Sheriff Hale fail.

I.      *John Pennington*

Plaintiffs allege that John Pennington ("Pennington"), a Jefferson County Deputy Sheriff, "appeared before a Circuit Court judge and gave perjured testimony in order to obtain a search warrant on the plaintiff's property."  *See* doc. 40, at 13, 17, 18 (counts 9, 20, 21).  Plaintiffs also allege that Pennington "gave an affidavit alleging false claims and failing to state any crime that has been committed or was in the process of being committed in the affidavit for said search warrant.  Said affidavit was filled with hearsay, conjecture, opinion and false testimony."  *Id.* at 6.  *See also* doc. 55, at 10 (Plaintiffs asserting same allegations in response brief).  However, Pennington is also entitled to qualified immunity for these money damages claims because Plaintiffs fail to sufficiently allege that Pennington violated a constitutional right.[9]

To reiterate the qualified immunity burden structure, once the public official demonstrates that he was engaged in a discretionary governmental function, "the burden shifts *to the plaintiff* to show that the defendant is *not* entitled to qualified immunity."  *Holloman*, 370 F.3d at 1264 (emphasis added).  The court first agrees with Pennington that obtaining search warrants falls within a sheriff deputy's discretionary function.  *See id.* at 1265-66 ("A government official acts within his or her discretionary authority if objective circumstances compel the conclusion

---

[9] To the extent that Plaintiffs seek to bring claims for money damages against Deputy Sheriff Pennington in his official capacity, such claims are barred by the Eleventh Amendment. *Carr*, 916 F.2d at 1527.

that challenged actions occurred in the performance of the official's duties and within the scope of his authority.") (citation and quotation marks omitted). Accordingly, the burden shifts and Plaintiffs "must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the violation." *Id.* at 1264.

While Plaintiffs assert a clearly established constitutional right, they fail to sufficiently offer factual assertions that Pennington violated this right.  The Eleventh Circuit instructs that "the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen." *Jones v. Cannon*, 174 F.3d 1271, 1285 (11th Cir. 1999).  Moreover, the Eleventh Circuit acknowledges that this rule regarding false statements also applies for search warrants.  *Id.* (citing *Franks v. Delaware*, 438 U.S. 154, 165-71 (1978); *United States v. Martin*, 615 F.2d 318, 327-29 (5th Cir. 1980)).  Here, Plaintiffs correctly state this constitutional right, but merely make the blanket assertion that Pennington violated it—thereby amounting to a legal conclusion unsupported by factual allegations.  *See Iqbal*, 129 S. Ct. at 1950.[10]  *Cf. Keating v. City of Miami*, 598 F.3d 753, 763-64 (11th Cir. 2010) (plaintiffs providing some factual detail regarding the specific "herding techniques" utilized by police officers in protestors' § 1983 action).  Indeed, "the

---

[10] In *Randall v. Scott*, 610 F.3d 701, 707 n.2 (11th Cir. 2010), the court also provided that "whatever requirements our heightened pleading standard [for § 1983 actions] once imposed have since been replaced by those of the *Twombly-Iqbal* plausibility standard."

legal conclusions in a complaint must be supported by factual allegations, and []

only a complaint which states a plausible claim for relief shall survive a motion to

dismiss." *Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010).[11]  Plaintiffs fail to

allege facts that state a plausible constitutional violation by Pennington; therefore,

the court **DISMISSES** the claims against Pennington **with prejudice**.

J.    *Randy Christianson*

Plaintiffs neglect to offer any factual allegations pertaining to Jefferson

County Chief Deputy Sheriff Randy Christianson ("Christianson").  *See generally*

doc. 40; doc. 55.  Moreover, Plaintiffs fail to assert any cognizable claims against

Christianson.  As such, even construing Plaintiffs' Amended Compliant liberally,

Plaintiffs never raise a plausible inference that Christianson is liable for money

damages.  *Iqbal*, 129 S. Ct. at 1950.  Thus, while Plaintiffs' *pro se* status certainly

affords leniency in pleadings, *see* doc. 55, at 11, "this leniency does not give a

court license to serve as *de facto* counsel for a party, or to rewrite an otherwise

---

[11] "We have held [] that the question presented by a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process. *Twombly*, *supra*, at 559, 127 S. Ct. 1955 ('It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side' (internal quotation marks and citation omitted)) . . . . The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'  *Siegert v. Gilley*, 500 U.S. 226, 236, 111 S. Ct. 1789, 114 L.Ed.2d 277 (1991) (Kennedy, J., concurring in judgment)." *Randall*, 610 F.3d at 709 (quoting *Iqbal*, 129 S. Ct. at 1953-54).  Also, permitting Plaintiffs an opportunity to amend is not an option because Plaintiffs never requested the opportunity to do so as a way to cure the deficiencies raised by Defendants.  Moreover, allowing Plaintiffs an opportunity to amend will be futile because Plaintiffs have already amended their complaint twice.  *See* docs. 25, 40.

deficient pleading in order to sustain an action." *GJR Invs.*, 132 F.3d at 1369. Accordingly, Christianson is **DISMISSED with prejudice**.

K.     *City of Morris*

Plaintiffs claim that the City of Morris "has come against the plaintiff, Joshua Allen Barber in the municipal capacity of the District of Columbia, kidnapping[sic] him into a foreign venue and imposing fines, jail time and penalties not within the purview of their jurisdiction and causing irreparable harm to the plaintiff." Doc. 40, at 24 (count 37).   Moreover, Plaintiffs assert that the City of Morris violated Plaintiff Joshua Allen Barber's "[r]ight to travel under the Fifth Amendment of the Constitution of the United States of America . . . where the Plaintiff has a Constitutional Right to travel uninhibited, i.e. no drivers license, no proof of insurance, no seatbelt, no registration of his private automobile," and the City of Morris "did falsely imprison the plaintiff, Joshua Allen Barber because he refused to engage in their commercial activity and to consent to be a party to their private, corporate municipal law by not appearing in their Municipal Court after having informed said court through a truth affidavit that he did not wish to engage and/or participate in their private corporate, commercial venue." *Id.* at 25 (counts 39, 40). *See also* doc. 55, at 12.  Thus, Plaintiffs claim that the City of Morris falsely imprisoned Joshua Allen Barber for failure to consent to the City's municipal court's jurisdiction and abide by certain state highway regulations,

thereby restricting his constitutional right to travel.[12]

The City of Morris argues that Plaintiffs fail to state a claim upon which relief can be granted, doc. 48 (incorporating by reference arguments made in doc. 17), and the court agrees.  Once again, absent any other indication, the court assumes that Plaintiffs seek relief under § 1983 for the alleged constitutional violations by the City of Morris.  "A municipality may only be held liable under § 1983 when one of its policies causes a constitutional injury."  *Am. Fed'n of Labor and Congress of Indus. Org. v. City of Miami, Fla.*, 637 F.3d 1178, 1187 (11th Cir. 2011) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).  Stated differently, "'[t]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality has a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.'" *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty., Fla.*, 610 F.3d 588, 603 (11th Cir. 2010) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)).  As such, it appears

---

[12] Although the language is ambiguous, Plaintiffs may also attempt to impose vicarious liability on the City of Morris for the alleged actions of B.L. Cochran—"Defendant, B.L. COCHRAN, an employee of the CITY OF MORRIS and acting in the capacity as a police officer in the District of Columbia, did threaten bodily harm against the plaintiff, Donald Joe Barber, and did entice Plaintiff to come to the CITY OF MORRIS where he could carry out his threats." Doc. 40, at 25 (count 28).  However, "a municipality cannot be held liable *solely* because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Instead, a Plaintiff must show that a city's policy or custom caused the constitutional violation. Here, Plaintiffs never allege that a City policy or custom *caused* Cochran's purported conduct. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1145 (11th Cir. 2007).

Plaintiffs claim that the City of Morris implemented a policy or custom to enforce certain state highway laws—such as requiring drivers licenses, proof of insurance, seatbelts, and registration of automobiles—and this policy or custom violates, or is deliberately indifferent to, Plaintiffs' constitutional right to travel.  *See* doc. 40, at 24-25.

Plaintiffs correctly maintain that a constitutional right to travel exists, and this right "protects a person's right to enter and leave another state, the right to be treated fairly when temporarily present in another state, and the right to be treated the same as other citizens of that state when moving there permanently."  *Doe v. Moore*, 410 F.3d 1337, 1348 (11th Cir. 2005) (citing *Saenz v. Roe*, 526 U.S. 489, 500 (1999)).  "However, mere burdens on a person's ability to travel from state to state are not necessarily a violation of their right to travel."  *Id.*  Put differently, "[a] state law implicates the right to travel when it actually deters such travel." *Attorney General of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986).  The court finds no constitutional violation arising from the City of Morris' enforcement of neutral traffic regulations because these regulations do not deter interstate travel.  *See Hendrick v. State of Maryland*, 235 U.S. 610, 622 (1915) ("In the absence of national legislation covering the subject, a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles,[] those moving in interstate commerce as well as others."); *Snavely v. City of Huntsville*, 785 So. 2d 1162, 1166 (Ala. Crim. App. 2000) ("[A] state may regulate its public highways and may impose reasonable

regulations for securing the safety of the travelers using those highways."). Thus, even taking Plaintiffs' Amended Complaint as true, the City of Morris validly enforced constitutional laws; accordingly, the court finds that Plaintiffs fail to state a cognizable claim for relief against the City of Morris and **DISMISSES with prejudice** Plaintiffs' claims against the City of Morris.

L.     *B.L. Cochran*

Plaintiffs first claim that B.L. Cochran ("Cochran"), a City of Morris employee, "and acting in the capacity of a police officer in the District of Columbia, did threaten bodily harm against the plaintiff, Donald Joe Barber, and did entice said Plaintiff to come to the City of Morris where he could carry out his threats."  Doc. 40, at 25 (count 38).  Plaintiffs also claim that Cochran came "to the plaintiff's home located in Birmingham, Alabama armed with assault rifles and did enter plaintiff's home, viet armis against the plaintiff[sic] will and without a proper warrant and without justification trying to arrest the plaintiff, Joshua Allen Barber, without lawful police power (out of the jurisdiction of the City of Morris) and acting in his private capacity, thus violating the plaintiff's fourth amendment right."  Doc. 40, at 26 (count 41).

As it relates to Plaintiffs' assertion that Cochran "threatened bodily harm," the court finds this claim devoid of any further factual development and merely "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 129 S. Ct. at 1949.  Cochran correctly contends that Plaintiffs' Amended Complaint contains no factual allegations regarding Cochran other than those alleged in

counts 38 and 41.  Doc. 48 (incorporating by reference arguments made in doc.

17).  Rule 8(a)(2) imposes a liberal pleading standard, but it still requires some

basic factual allegations demonstrating a plausible inference of liability.  *Iqbal*,

129 S. Ct. at 1949-50.  Furthermore, Plaintiffs again neglect to assert any specific

cause of action but contend that Cochran "acted in the capacity of a police officer"

and "was acting under the scope of municipal law" when he allegedly threatened

Plaintiff Donald Joe Barber; as such, the court assumes that Plaintiffs bring this

count pursuant to § 1983 for excessive use of force.  The facts pled simply offer

no reasonable inference that Cochran used excessive force in violation of the

Fourth Amendment.  *Cf. Crenshaw v. Lister*, 556 F.3d 1283, 1290-91 (11th Cir.

2009).

      Moreover, Plaintiffs' second claim against Cochran is filled with legal

conclusions that fail to sufficiently state a cause of action.  Plaintiffs assert that

Cochran acted "without a proper warrant," "without justification," "without lawful

police power," and "in his private capacity."  *See* doc. 40, at 26.  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice" to survive a motion to dismiss.  *Iqbal*, 129 S. Ct. at

1949.  The court cannot grant Plaintiffs' legal conclusions a presumption of truth

because they are unsupported by any factual allegations.  *See, e.g.*, *Am. Dental

Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293-94 (11th Cir. 2010).  In other words,

Plaintiffs simply reiterate the legal characteristics of a Fourth Amendment

warrantless search violation without sufficiently providing a factual basis for the

court to infer that such a violation occurred.  These conclusory statements fail to nudge the claim "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  *See also Wright v. Dodd*, 438 F. App'x 805, 806 (11th Cir. 2011) ("[A]s to Wright's false arrest claim, the complaint alleges in conclusory fashion that the police arrested Wright without a warrant, but does not allege any facts showing that the police lacked probable cause to arrest him.").  Accordingly, the court **DISMISSES** the claims against Cochran **with prejudice**.

M.    *Jackie Lee Robinson, Patricia Faye Smith, Christopher Dwayne Smith, North Jefferson Baptist Association, and Steve Loggins*

Plaintiffs allege that the Baptist Association Defendants "conspired with the other defendants to deprive the Plaintiffs of their Right to contract guaranteed under the Constitution of these united States of America and your Title 42 USC 1981 by the issuing warrants against the Plaintiffs for exercising their Constitutional Rights, contrary to previous Supreme Court rulings."  Doc. 40, at 30 (count 52).  This claim is merely a naked assertion of liability completely devoid of further factual enhancement.  *Iqbal*, 129 S. Ct. at 1949.  Put simply, the court cannot draw a reasonable inference of liability because Plaintiffs offer no allegations pertaining to this purported "conspiracy."  *See id.* at 1950.  Moreover, to "state a claim for non-employment discrimination under § 1981, a plaintiff must allege (1) he is a member of a racial minority, (2) the defendant intended to racially discriminate against him, and (3) the discrimination concerned one or more of the activities enumerated in the statute."  *Jimenez v. Wellstar Health Sys.*,

596 F.3d 1304, 1308 (11th Cir. 2010).  Here, Plaintiffs fail to properly allege any

factual basis for all three prongs of a § 1981 discrimination claim.  Therefore, the

court **DISMISSES with prejudice** all claims against Jackie Lee Robinson,

Patricia Faye Smith, Christopher Dwayne Smith, North Jefferson Baptist

Association, and Steve Loggins.[13]

N.    *Equitable Relief*

While Plaintiffs specifically demand money damages after each count in

their Amended Complaint, Plaintiffs also "respectfully request of this court an

injunction against the defendants from interfering with the daily lives of the

Plaintiffs and further to order them to either prove their jurisdiction in the matters

---

[13] Plaintiffs also filed a motion for default judgment against Faye Smith, North Jefferson
Baptist Association, Steve Loggins, Chris Smith, and John Pennington based on failure to timely
answer the Amended Complaint. Doc. 50. *See also* doc. 62. First, Pennington timely filed a
motion to dismiss Plaintiffs' Amended Complaint, doc. 43; as such, Plaintiffs' motion for default
judgment as it relates to Pennington is **DENIED**. Furthermore, while Plaintiffs' motion for an
entry of default against Faye Smith, North Jefferson Baptist Association, Steve Loggins, Chris
Smith, and Jackie Lee Robinson is procedurally correct, the court finds "good cause" would exist
for it to set aside a default—if it had entered one—and therefore **DENIES** Plaintiffs' motion for
default judgment. *See* Fed. R. Civ. P. 55(c). The Eleventh Circuit instructs that "'"[g]ood cause"
is a mutable standard, varying from situation to situation. It is also a liberal one-but not so elastic
as to be devoid of substance.'" *Compania Interamericana Export-Import, S.A. v. Compania
Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996) (quoting *Coon v. Grenier*, 867 F.2d
73, 76 (1st Cir. 1989)). As such, courts consider "whether the default was culpable or willful,
whether setting it aside would prejudice the adversary, and whether the defaulting party presents
a meritorious defense." *Id.* All three factors would weigh in favor of setting aside any default,
particularly in light of the fact that these Defendants present a meritorious defense against
Plaintiffs claims. *See also Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1317
(11th Cir. 2002) (affirming district court's denial of motion for default judgment where
defendant "filed a motion to dismiss a short time after the deadline for responsive pleadings,"
and plaintiff failed to show any prejudice). In short, the court cannot enter a default judgment
when the claims against these Defendants have no merit.

before them or in the alternative dismiss the cases as required by the Supreme Court decisions mentioned above." Doc. 40, at 30. Plaintiff Joshua Allen Barber also "petitions this court for an order for the CIRCUIT COURT OF JEFFERSON COUNTY to release him from the bondage that the Circuit Court has placed upon him, without jurisdiction in that they have failed and/or otherwise refused to prove that jurisdiction exist with them, against this American National State <u>C</u>itizen that is not within their venue." Doc. 40, at 30.

Without more, the court finds that Plaintiffs lack standing for an injunction pertaining to possible interference with their daily lives because there is no "'real and immediate threat of repeated injury.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). Even if the court assumes some past unconstitutional behavior by Defendants,[14] "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Id.* Finding no factual allegations of an imminent threat, the court **DENIES** this request for relief.

As it relates to the purported ongoing criminal cases proceeding against Plaintiffs in the Circuit Court of Jefferson County, the court must abstain from issuing an injunction pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). *See 31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003). "Federal courts

---

[14] The court notes that it finds *no* such alleged violations in Plaintiffs' Amended Complaint.

should abstain from exercising their jurisdiction if doing so would 'disregard the comity between the States and the National Government.'" *Wexler v. Lepore*, 385 F.3d 1336, 1339 (11th Cir. 2004) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987)).  Indeed, "*Younger* abstention is the doctrine that federal courts should abstain from interfering with ongoing state criminal prosecutions." *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1315 n.9 (11th Cir. 2005).  Under this doctrine, "where a plaintiff is the subject of a pending state prosecution under a statute that he argues is unconstitutional, the federal court generally should not intervene provided that the plaintiff has an adequate remedy at law in raising this constitutional defense in the state proceeding." *NTL, L.L.C. v. Pryor*, 128 F. Supp. 2d 1324, 1327 (N.D. Ala. 2001).  Although not challenging the constitutionality of a specific Alabama statute, here, Plaintiffs appear to be challenging the constitutional validity of the Jefferson County Circuit Court's criminal jurisdiction over them.  *See generally* doc. 40.  As the state court proceeding is still purportedly ongoing and Plaintiffs have yet to exhaust their existing state appellate remedies, the court finds that federalism concerns require abstention from considering this injunctive relief.  As such the court **DENIES** this request for relief.

Finally, Plaintiffs "petition this court for an order granting the plaintiff's permission to collect their costs and fees associated with defending the frivolous actions brought against them by the defendants." Doc. 40, at 30-31.  However, Plaintiffs fail to offer, and the court is unable to find, any basis in the law allowing

a federal district court to award costs from a separate and pending state court action.  Therefore, the court **DENIES** this relief.

## IV.   CONCLUSION

The court concludes that Plaintiffs' Amended Complaint maintains no viable right to relief against Defendants.  As a result, the court **GRANTS** the Defendants' motions to dismiss, docs. 42, 43, 44, 45, 48, 49, 53, and the Plaintiffs' Amended Complaint is due to be and is hereby **DISMISSED**.  The court also **DENIES** Plaintiffs' motion for default judgment, doc. 50.

**DONE** the 16th day of April, 2012.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE